R. H. PRATT and George A. Pratt, Copartners as Pratt Brothers, Respondents, v. HUBER MANUFACTURING COMPANY, a Corporation, Appellant.

(171 N. W. 246.)

**Appeal and error — new trial — presumption.**

1. Under the provisions of § 8 of chapter 31 of the Laws of 1913, it will be presumed on appeal that a new trial was not granted on account of the insufficiency of evidence to support the verdict, unless the insufficiency or unsatisfactory nature of the evidence is expressly stated in a memorandum prepared by the trial judge.

**Fraud — sufficiency of complaint.**
> 2. Complaint examined and *held* to state an action for actual fraud and deceit.

**Fraud — mistake of fact.**
> 3. A mistake of fact cannot be proved under an allegation of actual fraud.

**Allegation of fraud — constructive fraud.**
> 4. Constructive fraud cannot be proved under an allegation of actual fraud.

**Special verdict — findings by jury.**
> 5. Special verdict of the jury examined and its findings held not to be inconsistent.

**New trial — setting aside judgment — grounds for — findings.**
> 6. Where a complaint is for actual fraud and the special findings negative such fraud, and the findings otherwise sufficiently cover the issues of the case, it is error to set aside a judgment rendered on such findings and to order a new trial.

Opinion filed November 4, 1918.

Action for fraud and deceit.

Appeal from the District Court of Griggs County, Honorable *J. A. Coffey,* Judge.

Judgment for defendant set aside and a new trial ordered.

Reversed.

Statement of facts by Bruce, Ch. J.

This is an appeal from an order of the district court setting aside a special verdict and the judgment entered thereon and ordering a new trial.

The complaint alleges the sale to the plaintiffs of a gasolene tractor engine, and "that the defendant at the time of making said sale represented to the plaintiffs that the tractor they were selling them was a *new, up-to-date,* and complete tractor, and that plaintiffs purchased same relying on said representations, that said machinery was new, complete and perfect, and that the machinery was capable of doing well the work for which it was manufactured, and that it was with reasonable care durable and capable at all times of performing the work, which representation was falsely and fraudulently made for the

purpose of deceiving these plaintiffs and inducing them to purchase said machinery.

"That said tractor so delivered by the defendant to these plaintiffs was not new, was not complete, and was not up-to-date; that it was old, the parts worn, decayed, and damaged, and that in the condition said tractor was in it was wholly unfit to do the work for which it was intended; its parts, being old and decayed, were continually breaking; that it would not develop the power represented and warranted to develop, and that *it was in no particular, the machinery represented and warranted to the plaintiffs and which the defendant represented to plaintiff it was delivered;* that said tractor was an old, worn tractor, but that for the purpose of deceiving and defrauding these plaintiffs said tractor had been repainted and was so covered with paint that an examination by these plaintiffs did not reveal to them the fact that it was an old and a worn tractor, and that during all of the years 1914 and 1915 and *while these plaintiffs were working with and attempting to operate said tractor to put same in condition so that it would perform the work for which it was purchased, the defendant continued to represent and inform plaintiffs that said tractor was a new machine,* that it was up-to-date, and that it could be made to comply with the conditions of the warranty upon which it was sold, and that these plaintiffs relying upon said representations and statements continued to attempt the operation and working of said tractor, and continually bought from the defendant extras and extra parts for said tractor, and hired workmen for the purpose of having said parts put on said machinery and for the purpose of having same repaired, and that if plaintiffs had not been deceived by the statements, warranties, and guaranty of the defendant they would not have attempted to operate said machinery, but that they did not know of said false and fraudulent representations until the spring of 1916, when they then learned that said tractor was an old worn tractor, the parts badly decayed and destroyed, and that it had been repainted and that thereby plaintiffs had been misled.

"That if said tractor had been as represented and warranted, and had it been a new up-to-date, perfect machine, it would have been worth the sum of three thousand two hundred fifty dollars ($3,250), the agreed purchase price thereof, but in the condition in which said

machinery is and was it was of no worth or greater value than the sum of two hundred fifty dollars ($250).

"That in attempting to operate said machinery and in their attempt to make said machinery perform the work for which it was sold and for which it was intended, plaintiffs have expended the sum of three hundred eighty and 50-100 ($380.50) dollars; that one hundred thirty-two and 50-100 ($132.50) dollars of said amount has been paid to the defendant for extra parts; that eighty dollars ($80) has been paid to Ludwig Rudd, a blacksmith, for his work and labor on said machinery, and that one hundred sixty-eight ($168) dollars of said amount has been the services of George A. Pratt for himself and team for twenty days at the value of eight ($8) dollars per day, one hundred sixty dollars ($160) and one extra man for four days at two dollars per day, eight dollars ($8), making one hundred sixty-eight ($168) dollars, and making a total of three hundred eighty and 50-100 ($380.50) dollars.

"That the representations, warranties, and statements so made by the defendant to plaintiffs during all of said time were so fraudulently made by the said defendant for the purpose of misleading and deceiving these plaintiffs and inducing them to purchase and accept said machinery and to continue their attempts to use same, and that the plaintiffs relied upon said warranties, representations, and statements, and purchased said machinery and continued to attempt the use of it, and were thereby damaged in the sum of three thousand three hundred eighty and 50-100 ($3,380.50) dollars.

"That the defendant has sold said notes and sold them before maturity to the First National Bank of Cooperstown, and that plaintiffs have been compelled to settle for said notes to said bank.

"Wherefore, plaintiffs demand judgment against defendant for the sum of three thousand three hundred eighty and 50-100 dollars ($3,-380.50) with eight (8) per cent interest on the sum of three thousand dollars ($3,000) from the 13th day of October, 1916, and interest on the sum of three hundred eighty and 50-100 ($380.50) dollars from and after the 1st day of January, 1916, besides the costs and disbursements of this action."

The answer is a qualified general denial. It admits the purchase of the machine, but alleges that it was purchased subject to a written

warranty, requiring notice to be given within six days of any defect and providing that:

"Failure to pay for the tractor at the time and place of delivery, and in the manner above provided; or a *failure to give any of the notices in writing as provided for herein;* or *failure to render friendly assistance and co-operation;* or *keeping the tractor after the six days allowed as above provided;* or *any abuse, misuse, unnecessary exposure, or waste committed or suffered by the purchaser, shall be a waiver of the warranty and full release of the warrantor,* without in any way affecting the liability of the purchaser for the price of the tractor or notes given therefor.

"It is agreed that the use of the tractor by the purchaser after the six days shall be construed as a complete fulfilment of this warranty. Any assistant sent to the purchaser by the company after said six days shall be the agent solely of the purchaser, who shall pay all expenses incident thereto, on demand.

"All agreements appertaining to this order (excepting the mere acceptance thereof at the home office) are included in the above."

"No agent or other person shall make any different warranty or vary or modify any of the terms or waive any of the conditions of this answer. . . . All the conditions of the sale must appear on the written order, as no verbal agreements of whatever nature will be recognized or allowed."

It further alleges:

"That said machinery was purchased by the plaintiffs (as a used or second-hand machine) and was thoroughly examined by said plaintiffs before purchasing the same; and that the quality, value, and condition thereof was fully disclosed to plaintiffs by defendant, and was subject to the inspection of plaintiffs before its purchase thereof.

"That said engine was not sold by the defendant as a new machine, and that the representations, statements, conversations, and dealings between the plaintiffs and defendant were merged in the written contract of sale; and that no other or different agreements, representations, warranties, or contracts were made between the plaintiffs and the defendant, than that hereinbefore set forth and described herein.

"That defendant has complied with the terms and conditions of said contract on its part to be performed, but that the plaintiffs have wholly

41 N. D.—20.

failed, neglected, or refused to comply with the terms and conditions on their part to be performed under the terms of said contract.

"That among other things the plaintiffs did not give the notice of the alleged defective condition of said machinery within the time or in the manner required by said contract and warranty, or at all, and did not give such notice to said defendant at its home office, stating what parts or wherein said machinery was defective, or did not comply with the contract and warranty, and did not give the defendant a reasonable time in which to examine said machinery, and to ascertain the condition thereof and the extent to which the same was not in the condition represented by said contract. That the said plaintiffs did not return the part or parts of the machinery claimed to be defective, or not as represented by the defendant to the plaintiffs, where received, and did not give the defendant the option to either furnish another tractor, or a new part for that claimed or found to be defective, or return the money and notes and other property given for the purchase price thereof, or the value of the same, and thereby rescind the contract in whole or in part, and be hereby released from any further liability.

"That if any metallic piece on said machinery broke during the first season, by reason of a flaw therein, the defendant furnished a new piece in its place, free on board the cars at its factory, upon such broken piece being returned to the factory promptly, and it appearing thereby to the satisfaction of the defendant that the break was caused by the flaw.

"That the said plaintiffs, after purchasing and taking possession of said engine, have retained the possession thereof, and now have possession of said property. That said plaintiffs have used said machinery for a period of more than two years for their own benefit and advantage.

"That said plaintiffs waived and condoned any alleged fraud by their acceptance of the contract and their performance thereof, and by their retention and use of said machinery for a period of more than two years and long after the said plaintiffs were *fully advised of the facts upon* which said plaintiffs now base their claim for fraud, as set forth in the complaint.

"That during the time that the said plaintiffs have used and re-

tained said machinery, they have permitted the same to be abused, misused, and exposed to the elements, and have by their own affirmative disposition of said property made it impossible to place the parties *in status quo* or rescind the agreement on account of any alleged fraud. That by reason of the failure of said plaintiffs to comply with said contract and warranty, and by reason of the failure of said plaintiffs to give any of the notices in writing, as provided in said contract, and by reason of the failure of said plaintiffs to render friendly assistance and co-operation in connection with remedying defects in said machinery, and by reason of the retention of said machinery after the six days allowed in said contract, and by reason of the abuse, misuse, and unnecessary exposure and waste of said property committed and suffered by said plaintiffs, there has been a complete waiver and release of said defendant from any liability on account of the purchase of said machinery. That under the terms and conditions of the contract and purchase and sale of said machinery, the remedy of said plaintiffs was *limited to rescission, and any and all claims for damages* brought by said plaintiffs, as set forth in the complaint, or otherwise, are barred, and said plaintiffs are limited to the exclusive remedy of rescission agreed upon in the contract made at the time of the purchase of said machinery by said plaintiffs."

The special verdict is as follows:

Q. 1. Were the plaintiffs, R. H. Pratt and George A. Pratt, at all times mentioned in the complaint, and are they now copartners, and is the defendant a foreign corporation?

A. 1. Yes. (Answer inserted by stipulation).

Q. 2. Did the plaintiffs and the defendant on the 13th day of October, 1913, enter into a written agreement, exhibit A, for the purchase by the plaintiffs and sale and delivery by the defendant of a 30 by 60 cap cylinder, traction, gasolene engine?

A. 2. Yes. (Answer inserted by stipulation.)

Q. 3. Did the defendant on the 20th day of October, 1913, deliver to the plaintiff a 30 by 60, cap cylinder, traction gasolene engine, and did the plaintiffs at the same time settle for the machinery by executing and delivery of the notes described in exhibit A, and by delivering the universal gas tractor as described in exhibit A, and pay the

freight on said engine from Fargo to Cooperstown in the amount of $110 ?

A. 3. Yes.   (Answer inserted by stipulation.)

Q. 4.   What was the actual money value of the notes and gasolene tractor engine delivered by the plaintiffs to the defendant in settlement of the 30 by 60 cap cylinder gas traction engine delivered to the plaintiffs by the defendant on October 20, 1913 ?

A. 4.   $3,250.

Q. 5.   Was the 30 by 60 cap cylinder traction gasolene engine so sold and agreed to be delivered by the defendant to the plaintiffs to be a new and unused tractor ?

A. 5.   Yes.

Q. 6.   If you answer question No. 5, "Yes," then did the defendant at the time of the making of the contract exhibit A falsely and fraudulently, and with intent to deceive and defraud the plaintiffs, represent to the plaintiffs that it was selling them a new and unused 30 by 60 cap cylinder gasolene tractor engine?

A. 6.   No.

Q. 7.   Now, if you answer question No. 6, "Yes," then did the plaintiffs rely upon such representations and were they deceived thereby and thereby induced to purchase said tractor and were they thereby damaged ?

A. 7.   No.

Q. 8.   Was the 30 by 60 cap cylinder gasolene tractor delivered by the defendant to the plaintiffs on the 20th day of October, 1913, a new and unused tractor engine ?

Q. 9.   If you answer question 8, "No," then did the defendant knowingly and with fraudulent intent to cheat, wrong, and defraud plaintiffs, deliver to the plaintiffs a second-hand, overhauled, and repainted gasolene tractor engine ?

A. 9.   No.

Q. 10.   If you answer question No. 9, "Yes," then did plaintiffs know at the time the tractor was delivered to them that it was not a new, unused tractor, and that it was a second-hand overhauled, and repainted tractor ?

A. 10.   .  .  .  /

Q. 11. What was the value of the tractor delivered by the defendant to plaintiffs on the 20th day of October, 1913, at the time of delivery and in the condition it then was?

A. 11. $3,250.

Q. 12. Did George A. Pratt on the 15th day of September, 1914, at the time when he signed exhibit 1, believe that the 30 by 60 cap cylinder gasolene tractor engine delivered to the plaintiffs by the defendant was a new and unused machine at the time of purchase?

A. 12. Yes.

Q. 13. Have the plaintiffs paid the agreed purchase price for said tractor delivered on October 20, 1913?

A. 13. Yes.

Q. 14. What amount of expenses have plaintiffs paid in their attempts to make said tractor so delivered to them on the 20th day of October, 1913, work, said expenses to include extras bought from the defendants, blacksmith bills, and cash paid in expenses for trips in connection with said work?

A. 14. $179. (Answer inserted by stipulation.)

Q. 15. Did George A. Pratt on the 15th day of September, 1914, when he signed exhibit 1, know that the 30 by 60 cap cylinder gasolene tractor delivered to the plaintiffs by the defendant on the 20th day of October, 1913, was not a new, unused tractor, but was a second-hand, overhauled, repainted, and used tractor?

A. 15. No.

Q. 16. Did the plaintiffs examine and inspect the machinery described in exhibit A, at Fargo, North Dakota, prior to the time of the execution and delivery of said exhibit A?

A. 16. Yes.

Q. 17. If you answer the last question, "Yes," then was the gas tractor engine delivered by the defendant to the plaintiffs on October 20, 1913, the same engine as that inspected and examined by the plaintiffs prior to the execution of exhibit A?

A. 17. Yes.

Q. 18. Did the plaintiffs sign exhibit 1?

A. 18. Yes. (Answer inserted by stipulation.)

Q. 19. Did the plaintiffs at the time of the signing of exhibit 1 pay to the defendant the sum of $72.50; and did the defendant furnish

to the plaintiffs the repairs listed in said exhibit 1 and send Mr. Carlson to put that repairs on the engine as therein described?

A. 19.   Yes.   (Answer inserted by stipulation.)

Q. 20.   Was the gasolene traction engine described in exhibit A the same engine as is described in exhibit 1?

A. 20.   Yes.   (Answer inserted by stipulation.)

*Lawrence & Murphy*, for appellant.

The common law requires that the parties should form an issue of their pleadings before the case can be decided by a jury.

The trial is the examination of the facts in issue.   3 Bl. Com. 330; Deane v. Williamette Bridge Co. 29 Pac. 440; Jones v. Baird, 76 Ind. 164; Ft. Scott R. Co. v. Karracher, 46 Kan. 611, 26 Pac. 1027.

Findings must be responsive to the issues made by the pleadings, and portions thereof which are not may be stricken out.   38 Cyc. 1925, and note.

Where the facts properly found are sufficient to sustain the special verdict, it is not rendered insufficient because another special finding consists merely of a conclusion of law or of an immaterial fact not in issue.   Pittsburg R. Co. v. Burton, 159 Ind. 357, 37 N. E. 150, 38 N. E. 594; Louisville R. Co. v. Berkey, 136 Ind. 181, 35 N. E. 3.

A special verdict should be construed fairly and reasonable, disregarding subtle and refined distinction or intendment and inference. Becknell v. Hosier, 10 Ind. App. 5, 37 N. E. 580; Keller v. Gaskill, 20 Ind. App. 502, 50 N. E. 363; Railsback v. Railsback, 12 Ind. App. 659, 40 N. E. 276, 1119; Ellwood v. Carpenter, 12 Ind. App. 459, 40 N. E. 548; Sirk v. Marion St. R. Co. 11 Ind. App. 680, 39 N. E. 421; Brason v. Studabaker, 133 Ind. 147, 33 N. E. 98; Woodward v. Davis, 127 Ind. 172, 26 N. E. 687; Pullman Palace Car Co. v. Gaylord, 9 Ky. L. Rep. 58; Mayo v. Keston, 78 Ga. 125, 2 S. E. 687; Cobb v. Wise, 71 Ga. 103; Voris v. Star City Bldg. etc. L. Asso. 20 Ind. App. 630, 50 N. E. 779; Tate v. Missouri R. Co. 143 Ill. App. 289; Alhambra Addition Water Co. v. Richardson, 72 Cal. 598, 14 Pac. 379; Fenn v. Blanchard, 2 Yeates, 543; Louisville, N. A. etc. R. Co. v. Lynch, 147 Ind. 165, 34 L.R.A. 293, 44 N. E. 997, 46 N. E. 471; Fenske v. Nelson, 74 Minn. 1, 76 N. W. 785; Everit v. Walworth County Bank, 13 Wis. 420.

A special verdict should be liberally construed, so that it will stand rather than fall; and if it expresses the findings of the jury upon the issues and facts, its form is immaterial. Everit v. Walworth County Bank, supra; Dodd v. Gaines, 82 Tex. 429, 18 S. W. 618; Pullman Palace Car Co. v. Gaylord, supra; Miller v. Shackleford, 4 Dana, 274; Voris v. Star City Bldg. & L. Asso. supra; Louisville, N. A. etc. R. Co. v. Costello, 9 Ind. App. 462, 36 N. E. 299.

An improper interrogatory and answer in a special verdict are immaterial where the verdict is sufficient regardless of them. Pittsburg R. Co. v. Back, 152 Ind. 421; Shipps v. Atkinson, 36 N. E. 375.

If any fact essential to support the complaint is not found plaintiff must fail. Shipps v. Atkinson, supra.

Fraud without damage or damage without fraud is not actionable. Both must concur in action for deceit. Enistein v. Marshall, 58 Ala. 153, 25 Am. Rep. 729; Kuentze v. Kennedy, 29 L.R.A. 360, 147 N. W. 124; Childs v. Merrill, 63 Vt. 463, 14 L.R.A. 264, 22 Atl. 626; Nelson v. Grondahl, 12 N. D. 130; London & L. Fire Ins. Co. v. Liebes, 105 Cal. 203, 38 Pac. 691; March v. Cook, 32 N. J. Eq. 262; Bartlett v. Blaine, 83 Ill. 25, 25 Am. Rep. 346; Danforth v. Cushing, 77 Me. 182; Hale v. Philbrick, 47 Iowa, 217; Stetson v. Riggs, 37 Neb. 797, 56 N. W. 628; Bodkin v. Merit, 102 Ind. 293, 1 N. E. 625; Bigelow, Fraud, p. 541; 14 N. D. 248; People v. Cook, 8 N. Y. 67, 59 Am. Dec. 431; Eastwood v. Bain, 3 Hurlst. & N. 738; Hemingway v. Hamilton, 4 Mees. & W. 115.

There must only be a false representation made with intent to deceive, but the representation must be relied upon and cause damage to a party before an action will lie. Barber v. Kilbourn, 16 Wis. 485; Castleman v. Griffin, 13 Wis. 535; Freeman v. Venner, 120 Mass. 424; Ide v. Gray, 11 Vt. 615; Randall v. Haselton, 12 Allen, 412; Fuller v. Hogdon, 25 Me. 243; Alden v. Wright, 47 Minn. 225, 49 N. E. 767; Marriner v. Dennison, 78 Cal. 202, 20 Pac. 386; Bailey v. Fox, 78 Cal. 389, 20 Pac. 868; Morrison v. Lods, 39 Cal. 381; Purdy v. Bullard, 41 Cal. 444; Wainwright v. Weske, 82 Cal. 193, 23 Pac. 12; Southern Development Co. v. Silva, 125 U. S. 247, 31 L. ed. 678, 8 Sup. Ct. Rep. 881; Smith v. Richards, 13 Pet. 26, 10 L. ed. 42; Wainscott v. Occidental, etc. Asso. 98 Cal. 253, 33 Pac. 88; Huffman v. Long (Minn.) 42 N. W. 355; Johnson v. Seymour (Mich.)

44 N. W. 344; Armstrong v. Breen (Iowa) 69 N. W. 1125; Beara v. Bliley (Colo.) 34 Pac. 271; Nelson v. Grondahl, 12 N. D. 130, 96 N. W. 299; Sonnesyn v. Akin & Babcock, 14 N. D. 256.

*H. R. Turner* and *Barnett & Richardson,* for respondents.

Regardless of the general rule, the practice in North Dakota is to attack the inconsistency and insufficiency of a special verdict by a motion for a new trial. Beare v. Wright, 14 N. D. 26; Sonnesyn v. Akin, 14 N. D. 248; Johnson v. Glaspey, 16 N. D. 335; Ward v. Gradin (N. D.) 109 N. W. 57; Lathrop v. St. R. Co. 23 N. D. 246.

When the different parts of a special verdict are inconsistent and in conflict with each other, the verdict must be set aside. 24 L.R.A. (N. S.) 50, note 3; Lathrop v. Street R. Co. 23 N. D. 255.

In entering judgment the court can look only to the special verdict for the determination of the facts in issue. The evidence cannot take the place of findings. Ward v. Gradin (N. D.) 109 N. W. p. 60; McBride v. R. R. Co. (Wyo.) 21 Pac. 687; Lathrop v. St. R. R. Co. supra.

The question of value when material should not be proven by offers made or prices asked. Jones Ev. § 169; 16 Cyc. 1141 (4); 1142 (B).

BRUCE, Ch. J. It is clear that the question of the insufficiency of the evidence to support the findings of the jury cannot be raised upon this appeal. Since § 8 of chapter 131 of the Laws of 1913 provides that: "With all orders granting or refusing a new trial, the judge shall file a written memorandum concisely stating the different grounds on which his ruling is based, and *unless insufficiency or unsatisfactory nature of the evidence is expressly stated in such memorandum, as a reason for granting the new trial, it shall be presumed on appeal that it was not on that ground.*"

No such memorandum was filed in the case at bar, and we must assume, therefore, that the new trial was granted either because he deemed the findings to be inconsistent, or that the special verdict established that the plaintiffs suffered no damage by reason of the alleged fraud, or found no such fraud or the amount of any injury.

It is clear to us that the complaint states an action for actual fraud and deceit, and that the case was tried upon this theory and this theory alone.

The gist of the action is actual fraud, and such the special verdict does not find. It does not even find a mutual mistake. It finds that the parties entered into an agreement for the sale and delivery by the defendant of a 30 by 60 cap cylinder traction gasolene engine; that the defendant on the 20th day of October, 1913, delivered to the plaintiff a 30 by 60 cap cylinder traction gasolene engine; that the 30 by 60 cap cylinder traction gasolene engine so sold and agreed to be delivered by defendant to the plaintiffs was to be a new and unused tractor; that the gasolene tractor so delivered was not a new and unused tractor engine; that the defendant did not falsely and fraudulently, and without intent to deceive and defraud the plaintiffs, represent to the plaintiffs that it was selling them a new and unused engine; nor did it knowingly intend to cheat, wrong, and defraud the plaintiff by delivering to the plaintiff a second-hand, overhauled, repainted gasolene engine. It also found in answer to two interrogatories that the engine delivered to the plaintiff was worth $3,250, the purchase price paid therefor. So far there is no finding of actual fraud. There is, however, a finding that at the time of the purchase the plaintiffs believed that the engine delivered to them was a new and unused machine, and, although they examined the machine, they did not know at the time of the purchase or delivery that it was not a new, unused tractor; and, as we have construed the answer, it is admitted that the tractor was not new, and that the defendant was aware of the fact at the time. Though, therefore, the complaint charges actual fraud, we find that the same is negatived by the findings, and though there is a finding of a mistake on the part of the purchaser of the machine (which the proof says he examined before it was delivered by the defendant, but that he believed to be a new and unused machine), there is no finding of a mistake on the part of the seller. We have, therefore, a case where a manufacturer agrees to sell an unused machine, but without fraud or intent to deceive, delivers a used one, and we fail to see why any such findings are inconsistent, as it is clear that such a delivery might clearly be made on the assumption that the second-hand machine was as good as a new one, or that, though a new machine had first been spoken of, the purchaser had examined the sample old one and was satisfied therewith. At the most we have a case where a person has contracted to buy a new machine and receives an old one. There is a mistake of fact on the part of the

purchaser but not on the part of the seller. Even if there were a mutual mistake of fact it is clear that such cause of action was not outlined by the complaint and cannot be relied upon. Connell v. El Paso Gold Min. & Mill. Co. 33 Colo. 30, 78 Pac. 677; Camp v. Carithers, 6 Ga. App. 608, 65 S. E. 583.

The facts present at the most a breach of a contract and in which the remedy of rescission has not been relied upon. Even, if they disclose a constructive fraud and come within the definition of § 5850 of the Compiled Laws of 1913, and if, as found by verdict, the defendants agreed to deliver to the plaintiff a new machine, and it was their duty to furnish the same, and the defendants were therefore guilty of a breach of duty for which they would be responsible, still constructive fraud cannot be proved under an allegation of actual fraud, nor can one recover upon a concealment where he has alleged an actual fraud. Haynes v. McKee, 19 Misc. 511, 43 N. Y. Supp. 1126; Markham v. Emerson, 69 Mo. App. 292; Biard v. Tyler Bldg. & L. Asso. — Tex. Civ. App. —, 147 S. W. 1168; American Surety Co. v. Pacific Surety Co. 81 Conn. 252, 19 L.R.A.(N.S.) 83, 70 Atl. 584. We are satisfied, therefore, that the trial court correctly entered judgment for defendant in the first instance, and that there was no justification for granting a new trial in the premises. We realize that where the findings are inconsistent a new trial may be granted, but there is nothing in the findings that is inconsistent. Actual fraud, as we have before said, is charged. Findings 6, 7, and 9 absolutely disprove that charge. There is nothing in the other findings that is inconsistent with those mentioned, and findings 17 and 20 seem to support them.

Nor do we believe that the judgment should be set aside on the ground that all questions were not fully presented or material issues were not fully presented, as the findings cover both the questions of fraud, both at the time and the making of the contract and at the time of the delivery of the engine.

The order of the District Court is reversed and the judgment which was formerly entered is ordered to be reinstated.

Grace, J. I concur in the result.

Robinson, J. (dissenting). In October, 1913, for the sum of $3,250 defendant agreed to sell the plaintiff a new and unused 30x60 gasolene

tractor with fixtures and equipment, and, in lieu of a new and unused engine, defendant delivered to the plaintiff an old second-hand and repainted engine which was of much less value. The plaintiff received and used the engine not knowing that it was an old repainted and second-hand engine, and he paid for the same in cash or notes at the price of a new engine. The jury found a special verdict most favorable to defendant. The court made an order granting a new trial and defendant appeals.

The motion for a new trial was made on these grounds:

1. Insufficiency of the evidence.

2. That the special verdict is insufficient and contradictory.

In the opinion as written by the chief justice it is said: The insufficiency of the evidence cannot be raised upon this appeal because the trial court has failed to make a memorandum showing that the order was based on the insufficiency of the evidence. Now, it often happens that in deciding a motion a judge fails to make and file any memorandum of his reasons. But surely the rights of the parties to a suit are not concluded by any such failure of the judge, and the counsel has no means of compelling a judge to give his reasons for any decision.

An order granting a new trial is to some extent discretionary, and it should not be reversed unless it appears to be wrong. Then it is said: The gist of the action is actual fraud, but that is not strictly true. *The gist of the action is a failure of the defendant to comply with its contract.* It is conceded that for $3,250 defendant agreed to deliver to plaintiff a new and unused engine, and, in lieu of the new engine, it delivered an old second-hand engine, repainted to look like new. And, of course, no old second-hand engine is equal to a new engine. In a suit to recover actual damages, the question is the difference between a new engine and an old engine, and the question of actual fraud is wholly immaterial. *The damage is the difference between the value of a new engine and the value of the old engine delivered to the plaintiffs.* Comp. Laws, § 7158. There being no claim for exemplary damages, the question of fraud is wholly immaterial. The special verdict is that the plaintiff bargained for a new engine and he got an old, repainted engine which he believed to be a new engine. It is true the jury say that the repainted engine was as good as new, but that is manifestly untrue. When a gasolene engine has been used so

that it has to be repainted to look like new, it is never as good as new. And the *evidence demonstrates to a certainty that the old engine was very far from being as good as new.* Indeed, it was almost worn out.

Defendant talks of its peculiar warranty which is a fraud on its face. No person except an expert machinist could ever comply with such a warranty. But that is of no consequence on this appeal. *Defendant contracted for a new engine and an old one was palmed off onto him. It was done by design,* by accident, or mistake. The motive is wholly immaterial. The order granting a new trial was clearly right and it should be affirmed.